# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

_____

| | | |
|---|---|---|
| **United States of America,** | ) | |
| | ) | No. **CR-17-323-PHX-DLR(BSB)** |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | March 2, 2017 |
| **Kevin Matthew Bianchi,** | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**BEFORE:  THE HONORABLE EILEEN S. WILLETT, MAGISTRATE JUDGE**

TRANSCRIPT OF PROCEEDINGS

DETENTION HEARING

**APPEARANCES:**

For the Plaintiff:
    U.S. Attorney's Office
    By:  **Charles Hyder,** Esq.
    40 North Central Avenue, Suite 1200
    Phoenix, Arizona 85004

For the Defendant:
    Jones Skelton & Hochuli
    By:  **Andrew Melvin McDonald, Jr.**, Esq.
    40 North Central Avenue, Suite 2700
    Phoenix, Arizona 85004

Transcriptionist:
Candy L. Potter
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 36
Phoenix, Arizona 85003-2151
(602) 322-7246

Proceedings Recorded by Electronic Sound Recording
Transcript Produced by Transcriptionist

1          THE CLERK:  Case number 17–7065MJ, United States of

2     America versus Kevin Matthew Bianchi, before the Court for a

3     detention hearing.

4          MR. HYDER:  Good morning, Your Honor, Charles Hyder on

5     behalf of the United States.

6          THE COURT:  Good morning, Mr. Hyder.

7          MR. MCDONALD:  Good morning, Your Honor, Mel McDonald

8     on behalf of Mr. Bianchi.

9          THE COURT:  Good morning, Mr. McDonald.

10          Good morning, Mr. Bianchi.

11          THE DEFENDANT:  Good morning.

12          THE COURT:  Counsel, what would you like to do with

13     regard to this detention hearing?

14          The Court has reviewed the updated report of March

15     1st, 2017, from Pretrial Services, and then the original report

16     that was dated February 13, 2017.

17          MR. HYDER:  Thank you, Your Honor.

18          The Government completely disagrees with the

19     recommendation of Pretrial Services.  I think the

20     recommendation is devoid of the recognition of the defendant's

21     past criminal history and performance while on probation.  And

22     that spans approximately about half of his lifetime.

23          And my latest count is he has at least 15 violations

24     of probation for crimes, which it appears from the Pretrial

25     Services' report a good deal of them should have been felony

CR-17-323-PHX-DLR – March 2, 2017

1    dispositions.

2            What the report reflects is that he's violated every

3    court order recorded in the PSR, which indicates I think

4    objectively that he has no respect for the law or for the

5    courts who have set the orders.

6            The thing that's disturbing and that we see

7    reoccurring is that there seems to be some passivity with

8    regard to the prosecution's cases regarding Mr. Bianchi

9    utilizing -- I hate to say excuse, but the readily available

10   reason that he needs drug treatment.

11           So he's released for drug treatment, and he goes

12   through that and continues to violate his probation.

13           I also think that -- and it's hard to judge, but I

14   also think that prosecutors in this particular case, in

15   studying the statutes and looking at these crimes, have not

16   pursued them probably in the way that I objectively think that

17   they should have been -- or maybe subjectively feel they should

18   have been pursued.

19           But I think that it's reasonable to look at his past

20   performance and to come to the conclusion that he would not be

21   a risk either on Pretrial release.  And he certainly has shown

22   by his record that he could be a danger and is a danger to the

23   community.

24           His last arrest I believe in California was for the

25   same type of conduct that we have here before us in these

—— CR–17–323–PHX–DLR – March 2, 2017 ——

1    charges.  And if my memory serves me correctly, that was just

2    in 2015.

3              What I would present to the Court is, objectively,

4    release based upon his record, proven record of over 20 years,

5    should not be considered.

6              Thank you.

7              THE COURT:  Thank you, Mr. Hyder.

8              Mr. McDonald.

9              MR. MCDONALD:  Thank you, Your Honor.

10             I'm somewhat surprised by Mr. Hyder's comments to the

11   Court.  We had went through a process a week ago when the

12   assessment was ordered.  Crossroads did that assessment.  If

13   they felt it was hopeless, he would have been rejected.

14             I've explained to him, what Mr. Hyder overlooks and

15   I've alluded to in earlier pleadings, Mr. Bianchi is a college

16   graduate.  He's never been convicted of a felony.  Admittedly

17   there have been issues where he's been placed on probation for

18   misdemeanors and hasn't carried it out.

19             I pointed out in earlier pleadings before

20   Judge Duncan –– and his mother was here a week ago when we had

21   the last hearing.  Her only other son went to prison, was

22   murdered at the Arizona State Prison.

23             We have talked, his mother and I have talked,

24   Mr. Bianchi and I have talked.  Your Honor, he realizes this

25   really is his last opportunity.  I was just mentioning to him

1    today, he seems much better today.  He's been away from the

2    drugs now for 20 days.  I would admit this is his last chance.

3         Crossroads now has a bed for him.  He's going to be

4    undergoing intense therapy.  And quite honestly, if he got out

5    after this opportunity and messed up again, there should be

6    severe consequences.

7         But given his background -- he has established quite a

8    reputation in the golfing circuit.  He has caddied with some of

9    the top professional golfers in the world.  And he has family

10   support.  He has education.  He has the ability once this

11   process is through.

12        And I would urge the Court to approve the

13   recommendation of Pretrial Services, give him this shot at

14   Crossroads.  I really believe, having talked to him that --

15   he's called me a number of times from the prison.  I think that

16   he's hit the crossroads of his life and ought to go to

17   Crossroads.  I would urge the Court to follow the

18   recommendation and give him that opportunity.

19        THE COURT:  I do have a question.  It appears in

20   California as though -- and I'm looking at the Pretrial

21   Services' original report on page 5.  It appears as though he

22   has had one, two, three -- he had three opportunities for drug

23   treatment and placement in a Santa Rosa, California matter.

24   And then he also participated in drug court in Oakland.  Is

25   that correct?

1          MR. MCDONALD:  If I could defer and let him answer,

2   Your Honor.

3          THE COURT:  Sir, let me go ahead and place you under

4   oath.  Please stand up, raise your right hand, we'll swear you

5   in.

6      (The defendant is sworn.)

7          THE CLERK:  Thank you.

8          THE COURT:  Sir, you've now been placed under oath.

9   You must tell the truth when you're under oath.  You can be

10  convicted of perjury if you lie.  The Government has the right

11  in a prosecution for perjury or false statement to use against

12  you any of the statements that you give when you're under oath.

13          Please tell me your full name for the record.

14          THE DEFENDANT:  Kevin Matthew Bianchi.

15          THE COURT:  Go right ahead, Mr. Bianchi.

16          THE DEFENDANT:  So the -- when I first went to

17  treatment in 2007, I was clean for almost six years.  In that

18  time I had my life back.  I had a new car, I had a house, I had

19  my father and my mother back in my life, I had a girlfriend.

20  It was -- I was in the program, I was working the steps, I had

21  a sponsor.  Everything was going great in my life.

22          And some turn of events, I broke up with -- my

23  girlfriend broke up with me and I used that as an excuse to go

24  back out.  And my whole life went downhill after that.

25          THE COURT:  Was that after the two convictions that

1    you spent it looks like 28 days each?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Okay.  Was that after that?

4              THE DEFENDANT:  No, that -- yes, it was after that.

5              THE COURT:  Okay.

6              THE DEFENDANT:  I am 46 years old.  I know I've made

7    mistakes in the past.  I've never had a failure to appear.  I

8    have violated probation, and I apologize for that.  But I don't

9    have another run left in me.  I do not want to use drugs ever

10   again.  I mean, the reason I got in trouble is because I was on

11   drugs.

12             And it's -- this has never been more important to me

13   in my life to get an opportunity to have my life back, to have

14   me back, to smile again, to have my family back, because

15   that's all I have.  And if you give me this opportunity I

16   promise I will not let you down.  I never, ever want to use

17   drugs again.

18             THE COURT:  You indicated to me that you were sober

19   for six years.  When was that?

20             THE DEFENDANT:  Almost six years.  From 2007 to almost

21   2013, in that area.

22             THE COURT:  I show a hit and run for which you were

23   convicted in 2011.

24             THE DEFENDANT:  That was an argument with -- a hit and

25   run in 2011?

—— CR-17-323-PHX-DLR – March 2, 2017 ——

1          THE COURT:  In Santa Rosa.  You received probation and

2    were revoked multiple times.

3          THE DEFENDANT:  And what?

4          THE COURT:  Or violated multiple times.

5          THE DEFENDANT:  That should be off my record.  That --

6    it was taken care of through DMV, I wasn't found guilty, I

7    don't think.

8          THE COURT:  You were convicted.  At least that's what

9    it shows on your NCIC.

10         THE DEFENDANT:  Okay.  I mean, I have a valid license.

11   So that shouldn't -- I mean, I'm not --

12         THE COURT:  You're telling me you were sober at that

13   time?

14         THE DEFENDANT:  Yes, absolutely.

15         THE COURT:  Okay.  Thank you.

16         THE DEFENDANT:  You're welcome.

17         MR. MCDONALD:  Your Honor, based upon what he has

18   provided to the Court, there has been a period of time where he

19   was under the influence, addicted to drugs.  He went almost six

20   years.  We don't for a moment deny the mistakes in the past.

21   But this is the first felony.

22         I would urge the Court -- in speaking with his mother

23   yesterday, her hope and dream is that this time he will get it

24   and go through the program and go through the steps again, as

25   he did during the first period of time.

1          I would urge the Court to follow the recommendation of

2   Pretrial Services and allow him this opportunity.

3          Thank you.

4          THE COURT:  Thank you.

5          And the Government in rebuttal?

6          MR. HYDER:  Your Honor, the injection of Mr. Bianchi's

7   brother into this is to me beyond the pail of what we're

8   concerned with here.  We're concerned with Mr. Bianchi.

9          We are in no different position today than he has been

10  in the last 20 years.

11         And I dare say -- in just looking at the rap sheet, I

12  dare say that every court he's been in front of has heard the

13  same pitch.  And I dare say that he's promised every court that

14  he will never get in trouble again, and that he's seen the

15  light.

16         The Government can only go -- make an objective

17  evaluation based upon the information we have.  And I think

18  realistically and reasonably there is no redeemable or

19  reasonable condition that's going to change Mr. Bianchi's

20  behavior.  And people suffer other than Mr. Bianchi when he's

21  out.  He is a danger, and he is a flight risk.  He hasn't

22  proven to any court that he can be trusted.

23         Thank you.

24         THE COURT:  Thank you, Mr. Hyder.

25         Mr. Bianchi, the matter is taken under advisement.

1    I'll be issuing an order by the end of today.

2              Thank you very much.

3              MR. HYDER:   Thank you, Your Honor.

4

5                               -oOo-

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                         C E R T I F I C A T E

5

6         I, CANDY L. POTTER, court-approved transcriber,

7    certify that the foregoing is a correct transcript from the

8    official electronic sound recording of the proceedings in the

9    above-entitled matter.

10

11         DATED at Phoenix, Arizona, this 13th day of March,

12   2017.

13

14

15

16                              s/Candy L. Potter__
                                Candy L. Potter
17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT