UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

| | |
|---|---|
| **United States of America,** ) | |
| ) | No. **CR-17-323-PHX-DLR(BSB)** |
| Plaintiff, ) | |
| ) | |
| vs. ) | Phoenix, Arizona |
| ) | February 23, 2017 |
| **Kevin Matthew Bianchi,** ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**BEFORE:  THE HONORABLE DAVID K. DUNCAN, MAGISTRATE JUDGE**

TRANSCRIPT OF PROCEEDINGS

DETENTION HEARING

**APPEARANCES:**
For the Plaintiff:
    U.S. Attorney's Office
    By: **Charles Hyder**, Esq.
    40 North Central Avenue, Suite 1200
    Phoenix, Arizona 85004

For the Defendant:
    Jones Skelton & Hochuli
    By: **Andrew Melvin McDonald, Jr.**, Esq.
    40 North Central Avenue, Suite 2700
    Phoenix, Arizona 85004

Transcriptionist:
Candy L. Potter
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 36
Phoenix, Arizona 85003-2151
(602) 322-7246

Proceedings Recorded by Electronic Sound Recording
Transcript Produced by Transcriptionist

1          THE CLERK:  Case number 17-70 -- 70765MJ, United
2   States of America versus Kevin Matthew Bianchi, on for a
3   detention hearing and status hearing regarding preliminary
4   hearing.
5          MR. HYDER:  Good afternoon, Your Honor, Charles Hyder
6   on behalf of the United States.
7          THE COURT:  Good afternoon.
8          MR. MCDONALD:  Good afternoon, Your Honor, Mel
9   McDonald on behalf of the defendant, Mr. Bianchi.
10         THE COURT:  Good afternoon.
11         Good afternoon, Mr. Bianchi.
12         THE DEFENDANT:  Good afternoon.
13         THE COURT:  Thank you.
14         The first thing I want to address is the notice of
15  substitution of counsel.  The only question that I have is
16  because of a document filed by defendant's previous lawyer
17  indicating that there had been some understanding that the
18  appearance of Mr. McDonald was solely for the purpose of the
19  detention hearing, and I want to make sure that that's not the
20  case.
21         MR. MCDONALD:  That is not the case, Your Honor.  I
22  have been fully retained and intend to proceed with this all
23  the way through.
24         THE COURT:  Very well then.  The Court will accept and
25  post on the docket the notice of substitution of counsel.

1    Thank you very much, Miss McClellan (sic).

2    Now turning to the issue of detention, what's the
3    Government's view?

4    MR. HYDER: Your Honor, the Government believes the
5    defendant should be detained.

6    THE COURT: And not in opposition to the screening for
7    Crossroads, you just think that you reject the recommendation
8    from the defendant that he be released to the third-party
9    custody of his mother pending the evaluation and placement at
10   Crossroads?

11   MR. HYDER: I have an objection to that as well.

12   THE COURT: So you have -- okay. Tell me why the
13   objection to placement at Crossroads, or even for the screening
14   possibility.

15   MR. HYDER: First of all, Mr. McDonald's informed me
16   that he had filed a motion. He let me handle it, but he needed
17   it -- I haven't seen it. Evidently it's in support of release
18   of the defendant.

19   THE COURT: Yes. Did you want to look at that? Did
20   you say you had a chance to look at it, Mr. Hyder?

21   MR. HYDER: I haven't seen that, Your Honor.

22   THE COURT: Oh, here's another copy.

23   MR. HYDER: Thank you.

24   May I approach?

25   THE COURT: Please.

1          I'm referring to a motion for assessment by the
2  Crossroads drug program and treatment. That's what you're
3  referring to?
4          MR. HYDER: Yes.
5          THE COURT: Okay. There you are.
6          MR. MCDONALD: Judge, I did hand it to Mr. Hyder
7  earlier. He didn't have time to read it.
8          THE COURT: I see. I got it.
9          We'll give Mr. Hyder as much time as he wants to take
10 a look at it.
11         MR. HYDER: May I approach?
12         THE COURT: Yes. Thank you.
13         Thank you.
14         I guess the question that I still have for the
15 Government is whether or not the Government thinks that there's
16 a reason that we shouldn't at least entertain the idea of
17 having the defendant screened for placement.
18         MR. HYDER: I don't have any objection to the
19 defendant being screened. I do have an objection that after
20 the completion of the screening or at the end of the screening
21 that he be released on his own recognizance.
22         THE COURT: I do too. And the reason that I do,
23 sir -- and I'll give your lawyer a chance to tell me why my
24 concern is not real here -- is that you have a significant
25 substance abuse problem, as displayed in your probation

1   revocations, really unprecedented.  I don't know that I've ever
2   seen so many probation violations, all associated with
3   substance abuse.  And so I get that that is the problem.
4           And the motion that you filed asked that you not be in
5   custody pending this evaluation, and not remain in custody
6   during the time between the evaluation and any possible
7   placement.
8           The problem is that one of the reasons that substance
9   abuse treatment succeeds is when people have had a thorough
10  chance to wash out.  And the problem is that I really can't
11  trust you, based upon your past track record, to do that
12  without a lot of strong support.  And I do not think right now
13  that family or you can provide that support.  I need
14  professionals at the task if it's even going to work at all.
15          But as I told you I'd give your lawyer a chance to try
16  to talk me out of this view.
17          MR. MCDONALD:  This is my attempt to talk you out of
18  it.
19          I will tell you, Your Honor, my client's mother came
20  in this morning from California.  Our request was, is that he
21  be sent with her.  We would agree to drug testing each and
22  every day, and would provide those copies to the Court.
23          As I mentioned in my pleading, in talking to his
24  mother, the defendant is her only other son.  The first son was
25  murdered while confined in the state prison.  She has been

1  beside herself with the confinement.
2          She also brought his stepbrother to court today who
3  lives in Arizona.
4          I would note, Your Honor, that -- and I would admit
5  there are many violations of probation, but not one failure to
6  appear.
7          THE COURT: But I'm not really worried about that so
8  much. I'm worried more about the ability of your client to
9  remain free of substance abuse. And that's the problem that's
10 been dogging him. And that's the one that would be my concern.
11 So that's why the past seems to be a prolog for me here.
12         MR. MCDONALD: Well, and again, what we would hope to
13 do is, if you released him to the control of his mother, I
14 would admonish her that if she would commit to the Court that
15 if he strayed from the house or did anything to violate that
16 condition of release, that he would -- she would have the
17 obligation to report him.
18         We are looking at Crossroads six days away for the
19 assessment. It's our hope that they will accept him. I've had
20 some discussions with him actually at length, both over the
21 phone and today. He has a strong desire to go in. He is age
22 46. He's had a very successful academic life. And he realizes
23 that drugs are what are messing his life up.
24         We're hoping, Your Honor, that -- one of the reasons I
25 asked his mother to come over from California was, if you had

1  any questions of her you could ask those questions.  But she
2  has assured me that she would be here, put him on the plane
3  with her.  It would essentially be a home confinement.  She
4  would take him for drug testing every day, and would see that
5  he is brought back here next Wednesday when Crossroads has
6  their assessment.  And we're hoping that Crossroads would
7  accept him into the program.
8        He's obviously -- he was going through a lot of
9  withdrawals with the initial meeting with the Pretrial
10 Services.  But I think he's doing much better.  And by that
11 time, with that proof, we can show them that he had been clean
12 for 20 days.
13       In the event that Your Honor wanted to keep him in
14 until Crossroads, what we were hoping is that as a condition of
15 Crossroads -- that he successfully complete it.  It's a
16 90-day -- as you know, a 90-day inpatient program.  And our
17 hope was, is that if he can prove through Crossroads that he
18 has been in the program, that he completes the program
19 successfully, he would then, if he wasn't released to his
20 mother today, at least that there would be an order only on
21 successful completion of Crossroads to be released to the
22 custody of his mother.
23       THE COURT:  Okay.  Well, what I'm going to do is, I am
24 going to detain you throughout the process here.  And I do so
25 because I do not believe any condition short of a very

1  professionally run treatment program gives you even any
2  reasonable chance of success.
3        And I know that you disagree with me, but I have been
4  down this road many times, not myself personally, but in the
5  company of many people who have.  And so I've learned some
6  things from that.
7        And I have learned that what Mr. McDonald says is
8  true, nobody wants to be a slave to a drug.  The problem is,
9  the drug exploits a very great vulnerability that the human
10 species has.  Part of the reasons -- part of the reason that
11 we're the apex of the food chain is because this motivational
12 technique really spurred us on to do very well and we beat
13 everybody else.  So we're the apex of the food chain.  And --
14 unless we're out in the wild with a cougar, I suppose, they win
15 then maybe.
16       But in any event, the problem is that this is a tough
17 battle, and it's really one that will require 150 percent of
18 your commitment.  And it will require that everything be
19 aligned in the situation where you are to be supportive of
20 that.  My sense is, based upon your past record, is that I
21 can't count upon you to mount that 150 percent battle by
22 yourself.  I think you have a shot at it if you do it at
23 Crossroads.  I don't think you have a shot doing it with your
24 mom and at home in the first instance.
25       And part of that is because of the recent drug use.

1  And that becomes a real problem.  The drug knows how to make it
2  so that you think only about that drug.  And again, this
3  requires 150 percent of you to beat back this voice that will
4  be in your head.
5         The thing about Crossroads is that they are at that
6  moment professionals about it, and they can give you some of
7  the best tools.  Now they can't solve the problem, obviously.
8  If they could, we wouldn't have the problem.  But unfortunately
9  it's a problem that turns on every individual's ability to meet
10 the difficult challenge of trying to turn off that voice that
11 says, find me again.  Because, again, it's the reason that
12 we're so successful, it uses an exquisite motivational
13 mechanism in our brain to get us to do things.
14        So my view is, and what we'll do is, I'll order that
15 you be evaluated on Wednesday for possible placement.  We'll
16 then set a subsequent hearing to consider the report that we
17 get back.  And that will be before the duty magistrate judge
18 who will consider the issues and decide what is the best thing
19 to do.
20        I would suggest to you between now and whenever you
21 are in control of your life to a greater degree than you are
22 now -- right now you're limited, you're in the prison garb, so
23 I know that you're at CCA.  But this period of time between now
24 and when you get back in regular clothes is a time you can take
25 advantage of in terms of doing some homework, homework designed

1  to make sure that you're in the frame of mind to best be able
2  to take advantage of what Crossroads offers.
3          It's not perfect.  Crossroads isn't perfect, but they
4  can offer some tools that can help.  And those tools are things
5  that only work if the person handling the tools has figured out
6  how best to use them.  Some of that you can do between now and
7  then.  You can think about the parts of your life that have
8  been successful for you and what has been a characteristic of
9  how you've beaten back the part of your life that has dragged
10 you down into substance abuse.  What are the things that you
11 do?  What are the things that work?  What are the things that
12 expose you to use and to vulnerability?
13         So you can think about those things and decide what
14 you can do to best prepare yourself.
15         To your mother I will say this, the State of Arizona
16 incarcerates some 30,000 inmates.  CCA holds 3,000.
17         Is that about right?
18         So you should understand that it's -- I don't know
19 where you lost your other son, and I'm sorry, I don't know
20 whether that was in California or whether it was in Arizona.
21         UNKNOWN VOICE:  It was in Arizona.
22         THE COURT:  All right.  In Arizona.
23         But there are 30,000 inmates in the Arizona Department
24 of Corrections.  You can imagine that that probably involves a
25 different level of supervision than is present at CCA.

1    The Corrections Corporation of America has the
2    contract with the United States Marshals to hold all of our
3    pretrial detainees.  In some respects that is a safer
4    environment than the environment in a state prison population,
5    because they don't know the backgrounds of everybody.  And some
6    number of people are before trial and they have not been
7    convicted of anything.
8         But essentially what makes a big difference is they
9    have to treat everybody as if they are a special case with
10   respect to their risk and their vulnerability.  And what that
11   means is, in general, a much higher level of supervision.
12        So if that helps you quiet some of the concerns that a
13   mother would naturally have, I think it's a reasonable thing
14   for you to be comforted by that.  It is a different situation
15   than is present when you are trying to administer 30,000
16   prisoners as opposed to 3,000.
17        So we'll set a hearing for --
18        THE CLERK:  Judge Willett has time available March 2nd
19   at 10:30.
20        THE COURT:  Will that work for everyone?
21        MR. MCDONALD:  We will make it work, Your Honor.
22        THE COURT:  Okay.  Mr. Hyder, is that all right with
23   the Government?
24        MR. HYDER:  March 2nd?
25        THE COURT:  Yes.  Next Thursday.

**CV-17-323-PHX-DLR - February 23, 2017**

1     MR. HYDER:  That will be fine.  10:30.
2     THE COURT:  10:30 in Judge Willett's courtroom, the
3  detention hearing.
4     And by that time there will have been the evaluation
5  from Crossroads and the Court will have a report that it will
6  be able to consider.
7     Thank you, sir.
8     Thank you, ma'am.
9
10                         -oOo-

C E R T I F I C A T E

I, CANDY L. POTTER, court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

DATED at Phoenix, Arizona, this 4th day of April, 2017.

s/Candy L. Potter
Candy L. Potter