ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona
CHARLES F. HYDER
Assistant U.S. Attorney
Arizona State Bar No. 001967
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Chuck.Hyder@usdoj.gov

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR-17-00323-PHX-DLR |
|---|---|
| Plaintiff, | **UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION [DOC. 26]** |
| v. | |
| Kevin Matthew Bianchi, | |
| Defendant. | |

The United States of America (the "government") responds to defendant's Motion for Reconsideration (Doc. 26). The government incorporates by reference and includes herein as part of this pleading all records in this matter.

The hearing before United States Magistrate Judge David K. Duncan on February 23, 2017 was a scheduled detention hearing. The same day, the defendant filed a motion requesting that:

(1) He be released on his own recognizance for an evaluation by Crossroads to determine whether he would be accepted to their Drug Treatment Program;

(2) He be released to the supervision and care of his mother pending his evaluation by Crossroads; and

(3) He continue to be released on his own recognizance (a) if not accepted to the Crossroads program, or (b) upon "successful" completion of the program, a curious dichotomy of conditions (Doc. 12).

At the time of the detention hearing in front of Judge Duncan and the subsequent detention hearing in front of this Court on March 2, 2017, the only material possessed by the government regarding the defendant's criminal history was the Pretrial Services Report (PTSR at Doc. 2). The PTSR reflects that the defendant has lived with his mother for the past 25 years. The government was, and still is, opposed to any release of the defendant to the custody of his mother because it is clear from the PTSR that she has not, and cannot, ensure the defendant will not flee or commit further crimes. The report shows that the defendant has compiled his extensive criminal history while living with her.

Indeed, the government opposes a release of the defendant under any circumstances because of his criminal record, which shows that he is a flight risk and a danger to others as well as himself. The government did not object to the screening process, but did inform the Court and the defendant that the government *would* object to a release of the defendant on his own recognizance as recommended by Pretrial Services. RT 4:18-21 (Doc. 29).

Judge Duncan denied the defendant's request for release and stated that Pretrial Services should have screened the defendant for possible drug abuse (Doc. 13). Judge Duncan did not issue a "clear directive" nor did he indicate a "clear intent" that the defendant be treated at Crossroads, as the defendant claims. Rather, he agreed to an assessment only, and ordered that the defendant be evaluated for *possible* placement. He informed the defendant that a subsequent hearing would be set to consider the report from Crossroads and that it would be up to the duty magistrate judge to consider the issues and to decide what would be the best thing to do. RT 9:14-19 (Doc. 29). Therefore, there can be no inconsistency between the ruling of Judge Duncan and the subsequent ruling of this Court.

At the subsequent detention hearing before this Court, the government was in possession of the original PTSR, the addendum to the PTSR (Doc. 15), and the complaint with the agent affidavit attached (Doc. 1).

The addendum to the PTSR states that the defendant was screened by Crossroads and found suitable for placement and that a bed would be available on March 9, 2017 (Doc.

15, p. 1). The addendum also recommends "that the defendant be released on a Personal Recognizance," imposing conditions of release that the defendant's criminal history clearly shows would not be satisfied (Doc. 15, p. 2). This recommendation was made in spite of the fact that the pretrial services officer states that based on his history of substance abuse and recurring criminal behavior, the defendant poses a danger, including an economic danger, to the community; and that in combination with the substance abuse and continuing criminal behavior, the defendant's use of aliases makes him a risk of nonappearance (Doc 15, p. 2).

Defendant now argues that the government's arguments for detention were based upon inaccurate and incomplete information (Doc. 26, p. 4). In support of this contention, defendant cites additional information that he obtained *after* the hearings before both magistrate judges, namely the information contained in Exhibits 1-3 to his motion for reconsideration (Doc. 26). Neither the government nor the magistrate judges were privy to the exhibits prior to receiving defendant's motion. However, the information contained therein does not change the facts of defendant's criminal history, nor does it enhance his arguments for drug treatment and release; rather, it further supports the government's arguments.

Exhibit 1 is a letter from the defendant's former attorney who represented him in four prior cases. The letter adds nothing new to the information this Court possessed at the detention hearing on 3/2/2017. The defendant testified under oath to this information. The fact that defendant has no felony convictions and made all of his court appearances and attorney office appointments, as stated in the letter, does not detract from the fact that he continually committed crimes and had his probation revoked for not complying with the terms set forth by the court. The fact that he was "willing and motivated" to participate in drug treatment programs and completed a 30-day rehabilitation program is not persuasive. He was "willing and motivated" when he was incarcerated. Still, as reflected in the letter, the program was not successful in preventing the defendant from further drug abuse, and all subsequent attempts to have him treated have been equally unsuccessful. In spite of

defendant's excessive criminal record, Mr. Zelig requests this Court release him while the current charges are pending. Like the addendum to the PTSR, Mr. Zelig's request ignores the defendant's past criminal history.

Exhibit 2 is a letter from the same drug treatment facility mentioned in Exhibit 1, and speaks to the 30-day residential program the defendant completed on December 4, 2013. In the letter, the defendant was encouraged to participate in aftercare meetings, offered weekly, for a full two years, and to follow his relapse prevention plan to support recovery. But just 5 days later on 12/09/2013, defendant violated his probation and was given 30 days in jail, further demonstrating that the programs are not working to rehabilitate him.

Exhibit 3 is a letter from another former defense attorney. It illustrates how a man with such an extensive criminal history can have no felonies; not from his efforts to live a law-abiding life, but rather from prosecutors' passivity in prosecuting the felonies that the defendant committed, allowing him to plead to misdemeanors with probation. A close examination of the defendant's criminal history as reflected in the PTSR shows the same repetitive pattern; a felony offense pleaded down to a misdemeanor and a judge sentencing him to probation, the conditions of which defendant continued to systematically violate. The defendant had 13 arrests from 1996 to 2015; between the ages of 25 and 45. It appears that all of the arrests were for felony offenses which were subsequently reduced to misdemeanors. He was placed on probation in 9 of these convictions, and he violated his probation 15 times (PTSR at doc. 2, pgs. 3-6). In almost every instance that he was arrested and placed on probation, he subsequently committed crimes while still on probation (PTSR at Doc. 2, pp. 3-6).

Of special note is defendant's 10/30/2012 conviction, which was the fourth time he was convicted of a misdemeanor controlled substance offense and placed on probation (PTSR at Doc. 2, p. 5). His period of probation was 36 months. As part of the conditions of his probation, he was placed in a drug treatment program on 1/7/13. He was revoked on 3/1/13 and reinstated on probation. On 6/27/13, it appears he was, again, ordered to be

placed in a drug treatment program. Less than 3 months later, his probation was revoked and, again, he was reinstated in a drug treatment program.

And finally, in November 2015, the defendant was arrested for felonies related to receiving stolen property, possession of personal identification with the intent to defraud, and theft – all felonies. The prosecution elected to dismiss two of the felonies and to prosecute the theft, which was suspended/deferred under a court-deferred judgment.

It is submitted that a closer examination of defendant's criminal activities clearly supports the government's allegedly "inaccurate" and "incomplete" arguments, that the defendant was unsuccessful in complying with the drug treatments and terms of his probations. Nevertheless, the defendant is, again, attempting to use his substance abuse as a vehicle to obtain release from custody and to have the Court place him in a drug treatment program.

When reviewed objectively and realistically, defendant's extensive criminal history and the facts of this case, as well as the recorded similar offenses in California in 2015, clearly demonstrate that the defendant is a risk to take flight if released. He has the means and knowledge to manufacture and possess false identification documents, he has used a number of aliases in conducting his fraudulent schemes, and he has the ability to unlawfully access legitimate bank account records and steal the account numbers as well as produce false and fraudulent credit cards for numerous banks. Defendant's history of systematic and continual criminal behavior demonstrates, in the government's view, that he has no respect for the law, or orders of the courts in which he has appeared. He has repeatedly violated the conditions of his probations as well as committed crimes while he was serving probation for other crimes. The government submits that releasing the defendant to enroll in drug treatment programs, or other court-ordered programs, has proven to be unsuccessful in treating the defendant's substance abuse. In the same vein, for the reasons set forth above, it has been demonstrated that the defendant is a danger to the financial well-being of the public.

1       It is respectfully submitted that the defendant's motion for reconsideration of
2 detention should be denied.

3       Respectfully submitted this 11th day of April, 2017.

                                       ELIZABETH A. STRANGE
                                       Acting United States Attorney
                                       District of Arizona

                                       *s/ Charles F. Hyder*
                                       CHARLES F. HYDER
                                       Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on April 11, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing, thereby transmitting a Notice of Electronic Filing to the following CM/ECF registrants:

A. Melvin McDonald
JONES, SKELTON & HOCHULI, PLC
40 N. Central Ave., Suite 2700
Phoenix, AZ 85004
Tel: (602) 263-1700
Fax: (602) 200-7847
Email: mmcdonald@jshfirm.com
*Attorney for Defendant*

<u>s/ Lauren M. Routen</u>
United States Attorney's Office