A. Melvin McDonald, Bar #002298
JONES, SKELTON & HOCHULI, P.L.C.
40 North Central Avenue, Suite 2700
Phoenix, Arizona 85004
Telephone: (602) 263-1700
Fax: (602) 200-7847
mmcdonald@jshfirm.com

Attorneys for Defendant Kevin Bianchi

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| United States of America, | NO. CR-17-00323-PHX-DLR |
|---|---|
| Plaintiff, | **Reply in Support of Defendant's Motion for Reconsideration** |
| v. | |
| Kevin Bianchi, | |
| Defendant. | |

Kevin Bianchi, by and through counsel undersigned, submits his Reply in Support of his Motion for Reconsideration to allow him to enter the Crossroads Inpatient Drug Treatment Program. The Government argues that Mr. Bianchi's criminal record shows that he is both a flight risk and a danger to himself and others and, therefore, should remain in custody. That claim is utterly without historical support as are the other claims of the government.

**I.     The Claim that Mr. Bianchi is a Flight Risk is Untrue and Misleading**

A review of Mr. Bianchi's criminal history reveals that he has *NEVER* failed to appear or fled any jurisdiction while under supervision of any court. His failures have been limited to breaches of terms and conditions of probation where he has been revoked and ordered confined to jail. Not once in his 44 years of life has he ever fled and had warrants issued for his arrest. He has *ALWAYS* appeared for court proceedings and the government claim that Mr. Bianchi is a flight risk is void of a single instance where he has failed to appear at a court proceeding.

5789650.1

## II. The Government Claim that Mr. Bianchi is a "Danger to Himself or Others" is Absurd and unsupported by any issues in his past.

There is nothing, absolutely nothing, in Mr. Bianchi's history that he has ever inflicted physical harm on himself or on another human being. The only recorded incident in his 44 years of life involved an argument with a former girlfriend. There is no history, indeed not a single instance, of violence directed against another, or inflicted upon himself.

The defendant, while addicted to drugs, committed economic offenses or offenses related to drug use such as DUI and/or possession. In the underlying facts of this case, Mr. Bianchi went into post offices unarmed, and used fictitious credit cards to purchase stamps. In every single transaction, there were no threats, violence, or force. In 100% of the incidents, the perpetrator, Mr. Bianchi, was an addict who had fallen off of the wagon. He realizes the magnitude of his mistakes and is pleading with the Court for this one last chance for treatment.

## III. The Prosecutor Blames a Lack of any Felony Convictions on Lenient Prosecutors, Lenient Probation Officers and Courts

It is important, in convincing the court not to refer Mr. Bianchi to Crossroads, to attribute to him accusations that he is a dangerous criminal/felon. When 44 years of life fail to support that claim (there being no criminal felony convictions), Mr. Hyder supports the "dangerous" claim by blaming prior prosecutors, probation officers and/or courts for the absence of any felony convictions. The fact of the matter, until the charges in this case, is that his prior history indeed involved misconduct that fell far short of felony prosecution. Most, if not all of these crimes were committed while he was using, and addicted to, drugs.

The prosecutor lists 13 arrests over 20 years to bolster his argument and suggests that lenient prosecutors, presentence writers and courts bypassed felony pleas or convictions. To accept this argument, one must believe that the dozens of people who dealt, face to face, with the issues, were all lenient and failed to push for what was potentially chargeable – a felony. The argument simply is not true.

In truth, the litany of prosecutors who dealt with Mr. Bianchi recognized the issue was drugs. Drugs has been an ongoing problem in his life, and Mr. Bianchi does not want to excuse his behavior, but rather attempt to explain it. Mr. Bianchi understands that remaining clean and sober is a lifelong struggle, but he intends to continue learning new methods to stay sober by attending treatment programs such as Crossroads, to prevent relapses. There have been extended periods over many years that he successfully completed drug programs and was a productive citizen.

**IV.    All of those Court Professionals Who Evaluated Mr. Bianchi were Convinced that Crossroads Would Be Beneficial.**

As this Court is aware, Pretrial Services recommended that Mr. Bianchi participate in a treatment program. Likewise, Judge Duncan also ordered that Mr. Bianchi be screened for the Crossroads program. Why in the world would Judge Duncan go through the motions of ordering a screening if he didn't see that as a highly positive option for dealing with Mr. Bianchi? Crossroads accepted Mr. Bianchi into their program after a highly probative screening. Why would Crossroads accept Mr. Bianchi into their program and pretrial services recommend Crossroads if they didn't believe that he was treatable, and that treatment would be far preferable to sitting in a cell in Florence, Arizona?

Judge Duncan, Pretrial Services, and Crossroads all saw value in making another attempt to get Mr. Bianchi critical treatment to address and overcome his drug issues. To deny him the opportunity to attend because he has made mistakes in the past, or because he has new charges, does not make sense and inconsistent with the intentions of Judge Duncan and Pretrial Services and the experts from Crossroads who made the assessment.

**V.    Crossroads Will Have Available Space and Can Accept Him into a 60-day Program Which is Inpatient.**

It is more beneficial and cost-effective to allow Mr. Bianchi to attend the Crossroads program than to keep him incarcerated and excluded from treatment. In this case, Mr. Bianchi genuinely desires, if given the opportunity, to enter into Crossroads'

inpatient program, which significantly reduces any conceivable flight risk, and significantly reduces the chance that he will be a danger to himself or others. The Crossroads is a licensed substance abuse treatment center that offers a 60-day inpatient program—Mr. Bianchi cannot leave the facility during that time. They also have a 30 day intensive treatment program which can precede or follow the 60-day program. If admitted, counsel will move to continue all trial proceedings and will agree to exclude time until that intensive programs are completed. He must comply with the facility and program rules, and attend several therapeutic sessions and fully understands that if he failed, he would be returned to the CCA and the consequences of such failure would not bode well at sentencing. He has already been accepted into the program, and it would only serve to benefit both Mr. Bianchi and the community if he were to successfully complete the same.

### VI. Drug Treatment Programs Have Worked for Mr. Bianchi in the Past.

Contrary to the government's claim, Mr. Bianchi has succeeded in drug treatment programs. His success rate is 2 for 2 as evidenced by the reports attached in the original motion. He did relapse resulting in these charges, but at one point was drug free for six years. He worked as a very gifted golf professional and has worked with some of the top golfers on the professional tour.

Crossroads is an "inpatient" facility. He has never, in his mortal life, fled any prior drug treatment centers. In each and every prior admission, he has successfully completed all programs. There are currently two options on the table – allowing the defendant to stay in confinement without treatment awaiting an ultimate disposition and sentencing, or be spending that time in confinement receiving critical treatment, which dramatically increases Mr. Bianchi's chances at ultimate success

### VII. Mr. Bianchi's Mother Would Help Pay for the Costs of Treatment

Mr. Bianchi and his family have offered to pay for the cost of the program and to allow him to return home or to CCA after the program is completed and his case has been finally resolved in the court. The government will have one less inmate to

house, feed, or care for. Mr. Bianchi's medical problems and concerns will no longer need to be addressed by the health care provider in custody.[1] For an individual who has never shown a propensity to flee (as indicated by his former counsel in the original motion), he desperately desires and is willing to complete an inpatient treatment program. It does not make sense to have him remain incarcerated when there are better, more therapeutic options that he can participate in while awaiting trial or disposition on the current charges.

For the reasons set forth above, we ask that the Court reconsider its decision and allow Mr. Bianchi to participate in the 60-day inpatient treatment program at The Crossroads to be preceded or followed with an intense 30-day drug treatment program.

RESPECTFULLY SUBMITTED this 18th day of April, 2017.

JONES, SKELTON & HOCHULI, P.L.C.


By /s/ A. Melvin McDonald
A. Melvin McDonald
40 North Central Avenue, Suite 2700
Phoenix, Arizona  85004
Attorneys for Defendant Kevin Bianchi

---

[1] Mr. Bianchi recently fell while in the shower at CCA. He sustained a debilitating back injury that makes it extremely painful and difficult for him to get in and out of bed. Prior to his arrest in this case, he had undergone major spinal surgeries for disk problems with his spine. Staff had to rearrange his cell so that he could use the bottom bunk, but even the bottom bunk is uncomfortable.

5789650.1                                5

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of April 2017, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document to the following non-CM/ECF participants:

Charles F. Hyder
US Attorney's Office
2 Renaissance Square
40 North Central, #1200
Phoenix, AZ  85004
Chuck.Hyder@usdoj.gov

/s/ Diana Weeks